OPINION OF THE COURT
Ira B. Warshawsky, J.
Background
Delta Financial Corporation (DFC) filed a lawsuit against defendants James Morrison, Delta Funding Residual Exchange Company, LLC (LLC) and its management company, Delta Funding Residual Management, Inc. (DFRM) (collectively hereinafter known as the LLC), after the LLC withheld certain monies allegedly due DFC. The LLC thereafter commenced an action for approximately $110 million plus interest for, among other things, fraud with regard to an exchange of assets between the LLC and DFC in and about August 2001 (the 2001 exchange).
In and about July 2004, the LLC commenced an action against the accounting firm of KPMG for approximately $110 million plus interest with regard to KPMG’s alleged misconduct in connection with an audit of DFC that was related to the 2001 exchange. All matters have been consolidated before the Honorable Ira B. Warshawsky, Justice of the Supreme Court, Nassau County, Commercial Division. Familiarity with the facts is assumed and only relevant facts will be restated when necessary.
DFC’s Objection to the Designation of a Group of LLC Documents as Privileged
During the discovery phase of this litigation, DFC served a document demand upon the LLC that, inter alia, requested the production of documents (the demand) relating to and concerning Boston Portfolio Associates (BPA). In its response to DFC’s *430 demand, the LLC apparently produced responsive documents and produced a privilege log that designated a number of the responsive documents as privileged (the disputed documents). It is the designation of the disputed documents as privileged by the LLC to which DFC has voiced objection. The issue was presented to the court-appointed referee, Michael Cardello, Esq., for an in camera review of the disputed documents to render a determination regarding whether the disputed documents were protected as privileged and, therefore, not discoverable. Upon discussion with Mr. Cardello, the court determined that oral argument was necessary for the court to render a decision on the privilege issue. Although Mr. Cardello has been designated to hear and determine these types of issues, the court believes that a formal decision is warranted in this instance.
The LLC’s Retention of BPA
In early 2002, BPA was hired by the LLC to assist with its preparation of the LLC’s financial statements, namely, to conduct two residual certification evaluations, one as of September 30, 2001 for Securities and Exchange Commission (SEC) reporting purposes, and one as of August 23, 2001 to establish the value of excess cash flow certificates at the time of the exchange (the initial retention). Apparently, DFC would not assist the LLC with its reporting obligations to the SEC, which led to the initial retention.
In or about January 2003, when the LLC began to contemplate legal action based upon its concern that the certificates were worth substantially less than what DFC purportedly represented in connection with the exchange, LLC retained litigation counsel, Christopher Byrne, Esq. In February 2003, Mr. Byrne retained BPA to serve as a litigation consultant to assist him in understanding the complexities of the valuation of the certificates (the litigation consultant retention).
The LLC claims that the litigation consultant retention was distinct from the initial retention as there was a separate engagement letter, bills were sent separately, etc. According to the LLC, because certificate valuation is a complex task in a highly specialized field, a consulting expert such as BPA was necessary for litigation counsel to effectively and properly litigate the case. It is the universe of documents that relate directly to BPA’s work as a litigation consultant *431 that the LLC claims is privileged, and therefore, not subject to discovery.*
During oral argument on September 15, 2006, counsel for the LLC argued that not every document created by BPA after February 10, 2003 (the date that the litigation consultant retention commenced) is privileged. Only documents created or communicated by BPA to Mr. Byrne within the scope of the litigation consultancy are protected and not subject to disclosure. In fact, counsel for the LLC stated, it is not a temporal issue in that only documents dated prior to February 10, 2003 were produced. Counsel for the LLC contends that it reviewed all documents and produced all responsive documents without consideration for date (before or after February 10, 2003) but withheld documents created in connection to the litigation consultancy, namely, the disputed documents. Counsel for the LLC argued that the disputed documents are cloaked with privilege as attorney work product and trial preparation materials, and therefore, are not subject to disclosure. In support of its position, counsel for the LLC cites Aetna Cas. & Sur. Co. v Manshul Constr. Corp. (2001 WL 484438, 2001 US Dist LEXIS 5735 [SD NY, May 7, 2001]), claiming that the same principles in that case apply in the instant case in that someone likely to be named as a fact witness does not automatically translate into a requirement that any document the fact witness authored for an attorney is producible.
On the other hand, DFC contends that any document related to any valuation performed by BPA is discoverable because valuation is at issue in the case and might generate cross-examination materials. Counsel for DFC argues that if BPA had not been hired as litigation consultants there would be no question that DFC would have the right to discover any repeated analyses that BPA did for the certificates at issue here. Counsel for DFC contends that any subsequent analyses, any statements of flaws in their prior analyses, and any analysis using DFC’s assumptions are discoverable. DFC claims that BPA documents cannot be shielded from discovery by the LLC engaging BPA as a litigation consultant.
*432 In support of its position, DFC cites City of Rochester v E & L Piping, Inc. (2001 NY Slip Op 40156[U] [Sup Ct, Monroe County 2001]) for the proposition that conversations between a litigation consultant and an attorney who hired him are not privileged if the litigation consultant is also a fact witness. Accordingly, DEC argues that it is entitled to discover all documents that bear on the value of the certificates at any time and the fact that a fact witness was hired as a litigation consultant cannot be used to narrow or restrict disclosure by the fact witness.
Discussion
Was BPA Retained as a Litigation Consultant?
The first inquiry for the court to resolve is whether BPA was, in fact, retained by the LLC as a litigation consultant. A review of the retention letter dated February 10, 2003 provided to the discovery referee, who provided a copy to the court, indicates that BPA was retained as a litigation consultant on February 10, 2003. Therefore, the court finds that BPA has been and is a litigation consultant for the LLC as of February 10, 2003.
Are Litigation Consultants Afforded Certain Protection?
The next issue is whether the disputed documents created by and/or communicated to or from BPA as litigation consultant to counsel should be privileged, and, therefore, not subject to disclosure. The First Department in Santariga v McCann (161 AD2d 320 [1st Dept 1990]) held that
“an expert who is retained as a consultant to assist in analyzing or preparing the case is beyond the scope of [CPLR 3101 (d)]; in fact, such experts are generally seen as an adjunct to the lawyer’s strategic thought processes, thus qualifying for complete exemption from disclosure under [3101 (c) — Attorney’s work product] and, now, the ‘mental impressions . . .’ exclusion of CPLR 3101 (d) (2) as well.” (Santariga, 161 AD2d at 321, quoting 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.52a, at 31-214; see also Lichtenberg v Zinn, 243 AD2d 1045 [3d Dept 1997]; Xerox Corp. v Town of Webster, 206 AD2d 935 [4th Dept 1994].)
Accordingly, the court finds that BPA, the litigation consultant hired by counsel for LLC to assist in the preparation of its cases against DFC and KPMG, is “an adjunct to the lawyer’s strategic thought processes, thus qualifying for complete exemption from disclosure under [CPLR 3101 (c)].” (See Santariga, 161 AD2d at 321.)
*433 Are the Disputed Documents At Issue Cloaked with Privilege?
The court must now determine whether the disputed documents created by and/or communicated to or from BPA as litigation consultant for the LLC should be cloaked with privilege, and therefore, not subject to discovery. The disputed documents have been provided to the court-appointed discovery referee, Mr. Cardello, for an in camera review which has been completed. Mr. Cardello has provided the court with copies of the disputed document for its own in camera review. The disputed documents consist of 10 documents, which have been labeled document Nos. 14, 15, 28, 47, 107, 109, 110, 119, 136, and 137. Document Nos. 14, 15, and 119 are identical and document Nos. 110 and 136 are identical. Moreover, document No. 137 has been removed from the privilege log and produced by the LLC to DFC. A review of the disputed documents indicates that they are documents that have been created as a result of either the litigation consultant retention or communications made in furtherance of the litigation consultant retention. Therefore, based upon an in camera review of the disputed documents, this court finds that the disputed documents are privileged.
Are There any Exceptions to the Privilege?
The next inquiry for the court is whether there are any exceptions to the rule that documents created by a litigation consultant for counsel pursuant to a litigation consultancy are privileged.
Does CPLR 3101 (d) Require Production of Privileged Documents?
One exception to the general mle may be whether CPLR 3101 (d) requires the production of documents created by a litigation consultant.
CPLR 3101 (d) (1) (i) states in relevant part:
“Experts, (i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion.”
Clearly, once a party has designated an expert, there is a requirement that certain discrete information be produced at the proper time during the litigation. In these consolidated actions, expert discovery will take place between June 2007 and *434 September 2007. Currently, parties are not required to designate an expert to testify at trial. However, as stated by the Court in Santariga, “an expert who is retained as a consultant to assist in analyzing or preparing the case is beyond the scope of this provision [CPLR 3101 (d)].” (Santariga, 161 AD2d at 321.)
Even if BPA were designated as an expert to testify at trial today, CPLR 3101 (d), which requires the limited production of information to the other side regarding qualifications of the expert, the subject matter of the expert’s testimony, the substance of the facts and opinions on which the expert is expected to testify, and summary of the grounds for the expert’s opinion, does not require the disclosure of the disputed documents. (See Einheber v Bodenheimer, 12 Misc 3d 1177[A], 2006 NY Slip Op 51264[U] [Sup Ct, NY County 2006].)
According to a memorandum from the State Executive Department, the purpose of CPLR 3101 (d) is to “encourage[ ] prompt settlement by providing both parties an accurate measure of the strength of their adversaries’ case . . . [and to] discourage [ ] [parties] from asserting unsupportable claims or defenses, knowing that they will be required to disclose what, if any, expert evidence will support their allegations.” (Mem of State Exec Dept. 1985 McKinney’s Session Laws of NY, at 3025.)
After the designation of experts, each party is obligated to disclose a summary of the grounds for each expert’s opinion. (See Einheber, 2006 NY Slip Op 51264[U], *7, citing Richards v Herrick, 292 AD2d 874 [4th Dept 2002]; Pizzi v Muccia, 127 AD2d 338 [3d Dept 1987].) The statute does not require “particularity.” (Scher v St. Luke’s-Roosevelt Hosp., NYLJ, Jan. 28, 2003, at 18, col 4 [Sup Ct, NY County, Bransten, J.].) Indeed, a party’s request for facts and opinions on which another party’s expert is expected to testify is improper. (See Krygier v Airweld, Inc., 176 AD2d 700, 700-701 [2d Dept 1991] [requesting party only entitled to substance of facts and opinions].) Thus, the court finds that there is no exception to the privilege afforded the disputed documents pursuant to CPLR 3101 (d).
Does the Holding of City of Rochester v E & L Piping, Inc. Provide for an Exception to the General Rule Regarding Privilege and Litigation Consultants?
DEC set forth the argument at oral argument that pursuant to City of Rochester v E & L Piping, Inc. (2001 NY Slip Op 40156[U] [Sup Ct, Monroe County 2001]), notwithstanding *435 LLC’s designation of BPA as a litigation consultant, any document created by BPA touching upon valuation, which is an issue in this matter, must be produced. In other words, the designation of BPA as LLC’s litigation consultant cannot limit the discovery of documents from a fact witness. In City of Rochester, the court held that the litigation consultant Barry Ingalsbe, hired by the City of Rochester as a litigation consultant, must testify at deposition on all issues that were related directly or indirectly with his position as the project manager for LeCesse Construction Company. However, this court finds that the City of Rochester case is distinguishable from the facts of the instant matter, and, therefore, is not guiding in its holding.
The facts in City of Rochester involved disputes regarding the City of Rochester Community War Memorial-Arena Expansion Project (the project). LeCesse was the project manager on the project and E & L Piping, Inc. was the HVAC prime contractor. Mr. Ingalsbe, an employee of LeCesse, was the senior project manger assigned full time to the project. According to the court in City of Rochester, Mr. Ingalsbe is a fact witness, familiar with the day-to-day operation of the project, and appropriate to be deposed. (See City of Rochester, 2001 NY Slip Op 40156[U], *2.)
On March 19, 1999, E & L was terminated from the project and final change orders relative to extra work performed by E & L were not issued until November 1999. During the project and through the final change orders, LeCesse was acting in its capacity as project manager. LeCesse was determining the claims to be paid and credits to be applied in the final change orders. E & L filed claims under the claims process stated in the contract. (Id.) Counsel for the City advised the court in City of Rochester that, in early 1998, the City requested LeCesse to act as a consultant to the City regarding the project’s related legal issues. LeCesse, by Mr. Ingalsbe, agreed to assist the City as the need arose. The City and LeCesse entered into a formal agreement, Agreement for Professional Services. (Id. at *3.) Under the terms of the agreement, LeCesse, by Mr. Ingalsbe, was to be a consultant, as directed by the City’s agent, with respect to the City’s potential claims against parties performing construction work on the project. (Id.) This agreement included consulting services to assist the City with determining whether to pursue legal claims, to assist in the preparation of the pleading, participate in all aspects of discovery proceedings or trial and to give testimony at trial. (Id.)
After an action was commenced by the City against, inter alia, E & L, the deposition of Mr. Ingalsbe was held during *436 which counsel for the City directed Mr. Ingalsbe not to answer questions concerning a meeting held the previous week between Mr. Ingalsbe and counsel for the City. (Id.) Counsel for the City relied upon a claim of “attorney’s work product and materials prepared in anticipation of litigation to protect certain documents and testimony.” (Id. [internal quotation marks omitted].)
According to counsel for the City, he did not have any objection to the deposition of Mr. Ingalsbe, who is a fact witness, as to the issues in the action, in his capacity as project manger. However, Mr. Ingalsbe was, at times, acting in a dual capacity as both on-site project manager and consultant to the City on legal issues related to the project. The issue, as framed by the court in City of Rochester, was what effect does this dual position of the witness have on his obligation to answer certain deposition questions. In other words, are such questions protected by CPLR 3101 or are some or all of the protections afforded a consultant to litigation lost because the witness is obligated to testify as a fact witness?
The court in City of Rochester stated that:
“Barry Ingalsbe, as a consultant to litigation would normally be entitled to the protections from disclosure of material prepared in anticipation of litigation by a consultant. CPLR § 3101(d)(2). However, hiring a fact witness as a litigation consultant cannot be used to narrow or restrict the testimony or disclosures by the fact witness. This is particularly true because the City, when it contracted with LeCesse as a consultant on litigation issues, was fully aware that LeCesse’s employees were or would be fact witness in any litigation. Therefore this Court must guard carefully the right of the examining party not to be limited in [its] scope of examination by the mere fact of the dual role of the witness. Barry Ingalsbe must be allowed to testify on all issues that are related, directly or indirectly with ' LeCesse’s position as the Project Manager.” (City of Rochester v E & L Piping, Inc., 2001 NY Slip Op 40156[U], *4 [Sup Ct, Monroe County 2001].)
However, the facts of the City of Rochester case are distinguishable from the facts of the instant case. Here, the documents sought by DFC are not documents created by the litigation consultant, BPA, as a fact witness. According to counsel for the LLC, all those documents have been produced. The documents that have been withheld are documents created by BPA *437 in its role as a litigation consultant. The documents would not have existed but for the litigation consultancy. The court finds this distinction relevant as there has been no narrowing of the scope of discoverable documents.
The court disagrees with counsel for DFC’s analogy during oral argument where it was claimed that what the LLC was trying to do was take a person, John Smith, who was standing on the corner of Fourth and Vine and had just witnessed an accident, and hire him as a litigation consultant to preclude his testimony as privileged. (See transcript at 23.) In the instant action, the disputed documents requested by DFC are documents that would not have existed but for the litigation consultancy. They were created as a result of the litigation consultancy. While the court is mindful that it was the LLC who hired a fact witness as a litigation consultant, the court finds that because the LLC has produced all BPA documents that were not created as a result of the litigation consultancy, there has been no narrowing of the scope of disclosure due to the litigation consultant retention.
Therefore, the court concludes that BPA is a litigation consultant and the documents created in that capacity and role are privileged without any applicable exceptions, and, thus, not subject to disclosure.

 LLC has stated that it has never claimed that documents created in connection with the initial retention by LLC are privileged. In fact, LLC claims to have produced all documents in its possession related to the initial retention. In addition, LLC claims to have produced all BPA related documents in its possession that were created after February 2003 that are unrelated to BPA’s retention as a litigation consultant.